J-S42035-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| SEAN ADAM SERAFINI KEPPEL | |
| Appellant | No. 1701 WDA 2015 |

Appeal from the Judgment of Sentence October 6, 2015
in the Court of Common Pleas of Erie County Criminal Division
at No(s): CP-25-CR-0002781-2014

BEFORE: SHOGAN, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED: July 20, 2016**

Appellant, Sean Adam Serafini Keppel, appeals from the judgment of sentence entered in the Erie County Court of Common Pleas following his convictions for driving under the influence-general impairment[1] ("DUI"), registration card to be signed and exhibited on demand,[2] and maximum speed limits.[3]  His counsel, Emily M. Merski, Esquire ("Counsel"), of the Public Defender's Office, has filed an ***Anders***[4] petition for leave to withdraw. Counsel discusses the sufficiency of the evidence supporting Appellant's DUI

---

[*] Former Justice specially assigned to the Superior Court.

[1] 75 Pa.C.S. §§ 3802(a), 3803(b)(2).

[2] 75 Pa.C.S. § 1311(a).

[3] 75 Pa.C.S. § 3362(a)(2).

[4] ***Anders v. California***, 386 U.S. 738 (1967).

conviction. We grant Counsel's petition and affirm Appellant's judgment of sentence.

We summarize the relevant factual and procedural history as follows. On July 3, 2014, Trooper Shane William Reaghard, of the Pennsylvania State Police, arrested Appellant for DUI and other traffic offenses. N.T., 10/6/15, at 18. On October 6, 2015, Appellant proceeded to a non-jury trial on the above offenses. Trooper Reaghard testified that he conducted the traffic stop in the afternoon of July 3, 2014, after observing Appellant's vehicle exceed the speed limit. *Id.* at 5. He testified on direct examination as to his encounter with Appellant:

> I was sitting stationary at McNulty's Food and Produce Shop, which is located on State Route 8. I saw a vehicle approach me at a high rate of speed in the northbound lane, activated my radar gun. It read 67 miles per hour.[5] I then conducted a traffic stop on the said vehicle.
>
> * * *
>
> Q. Did you have a conversation with [Appellant]?
>
> A. Yes. Once I asked him for his license, registration, proof of insurance, I noticed his eyes were glassy, bloodshot, detected a smell of or an odor of alcoholic beverage on his breath, and then I proceeded to ask him if he had anything to – any alcoholic beverages to consume or [if] he had smoked any marijuana because I also smelled an odor of burnt marijuana.
>
> Q. When you asked him for his driver's license and registration, did he comply with that?

---

[5] Trooper Reaghard testified Appellant was traveling in a 55 mile-per-hour zone. N.T. at 5.

A. Yes.

Q. Did you notice anything about the paperwork that he gave you?

A. The registration card was not signed.

*    *    *

Q. And you said you had asked him if he had been drinking?

A. Yes.

Q. What was his response to that question?

A. He said he had several drinks.

*Id.* at 5-7.

Trooper Reaghard described the field sobriety tests he asked Appellant to perform and Appellant's performance on the tests as follows:

The Romberg Balance Test is a test designed to see if the defendant is under the influence of any drugs. For the Romberg Balance Test, you put your feet together, arms down to your side, you close your eyes, tip your head back, count to thirty to yourself in your head, once you get to thirty, tip your head forward, open your eyes. The clues we look for in this test is bodily tremors, body tremors, and the time it takes for them to count to thirty, which are all indicators of different kinds of drugs they're on.

Q. So did you explain this test to [Appellant]?

A. Yes.

Q. Did he indicate that he understood your instructions?

A. Yes.

*    *    *

Q.  And can you describe his performance?

A.  During the test, he had body tremors and eye tremors, which are an indicator of a sign that you smoked cannabis.

\*     \*     \*

Q.  Okay.  Did you – what was the next test that you asked him to perform?

A.  Next test was the Walk and Turn.

Q.  Can you describe that test, please?

A.  For the Walk and Turn, place your right foot in front of your left, take nine heel-to-toe steps forward, and each step is heel-to-toe.  Once you get to the ninth step, take a series of small steps and take nine heel-to-toe steps back.

Q.  Did you explain this to [Appellant]?

A.  Yes.

Q.  Did he indicate whether he understood?

A.  Yes, he stated he understood.

Q.  Did you demonstrate this one?

A.  Yes.

Q.  Did he ultimately attempt to perform  the test?

A.  Yes.

Q.  Describe what you observed.

A.  During the test, he missed several heel-to-toe steps on the walk down, and on the walk back – I need to look to my report to know exactly what steps he missed.

\*     \*     \*

Q. What is the significance of the missed steps?

A. Shows signs of impairment.

\*   \*   \*

Q. Okay. I'm going to ask you a question again, whenever you were giving the instructions, did you observe anything else?

A. During the instructional phase, I noticed [Appellant] was swaying.

Q. Okay. Did you perform any other tests?

A. Yes, I had him perform the one-legged stand.

Q. Did you explain what the one-legged stand test is?

A. For the one-legged stand, you can use either leg, leg of your choice, pick it up approximately six inches off the ground and you count up one thousand one, one thousand two and so on until I tell you to stop. I use my watch and calculate thirty seconds out because everyone counts out for thirty seconds differently, so it's timed on my watch.

Q. So did you explain this to [Appellant]?

A. Yes.

Q. Did you demonstrate it for him?

A. Yes.

Q. What did you observe about him during this test?

A. During this test, [Appellant] was swaying and raised his arms.

Q. I'm sorry, say that again.

A. Appellant was swaying and raised his arms.

Q. Okay. What does that indicate?

A. It indicates signs of impairment.

*Id.* at 9-13.

Trooper Reaghard testified Appellant refused to submit to a preliminary breath test, participate in a series of tests that would be performed by a drug recognition expert, and submit to a chemical blood test. *Id.* at 14-15.

Appellant testified that Trooper Reaghard stopped him at approximately 9:30 p.m. and that he had not had any alcoholic beverages that evening. *Id.* at 25. He admitted that he "had a couple of beers" at lunch at approximately 2:00 p.m. earlier that day. *Id.* He conceded that he was speeding. *Id.* at 26. Appellant denied smoking marijuana that day, but he admitted to smoking marijuana "occasionally." *Id.* at 26, 35-36. Appellant confirmed Trooper Reaghard's testimony that he refused to submit to testing of his breath and blood. *Id.* at 29.

At the conclusion of the trial, the trial court found Appellant guilty of the above crimes. The trial court acquitted Appellant of DUI—controlled substances[6] and careless driving.[7] That same day, the court sentenced Appellant to an intermediate punishment sentence of one month of electronic monitoring, community service, and participation in drug and

---

[6] 75 Pa.C.S. § 3802(d).

[7] 75 Pa.C.S. § 3714(a).

alcohol evaluation, plus fines.[8]  *Id.* at 49; *see Commonwealth v. Sarapa*, 13 A.3d 961, 965 (Pa. Super. 2011) (observing DUI offenders "are eligible for [intermediate punishment programs] if it is their first, second, or third offense.  42 Pa.C.S. § 9804(b)(5)").

On October 26, 2015, Appellant filed a timely notice of appeal. Appellant filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court filed a responsive opinion.

We first examine whether Counsel complied with the requirements of *Anders* and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

> This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant].
>
> Prior to withdrawing as counsel on a direct appeal under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in *Santiago*.  The brief must:
>
> > (1) provide a summary of the procedural history and facts, with citations to the record;

---

[8] The trial court found Appellant guilty of two DUI offenses: DUI-general impairment and DUI-refusal to submit to chemical testing.  Refusal to submit to chemical testing is not an element of the offense of DUI under Section 3802(a).  *See* 42 § Pa.C.S. 3802(a); *Commonwealth v. Mobley*, 14 A.3d 887, 891-93 (Pa. Super. 2011).  However, the trial court did not sentence Appellant on both counts; therefore, no double jeopardy violation occurred. *Mobley*, 14 A.3d at 894 (discussing the practice of charging two counts of DUI pursuant to Section 3802(a) arising from a single incident and concluding that double jeopardy principles were not violated when the trial court only sentenced defendant on one count).

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worth of the court[']s attention in addition to the points raised by counsel in the *Anders* brief."

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014) (some citations omitted). If counsel complies with these requirements, "we will make a full examination of the proceedings in the lower court and render an independent judgment [as to] whether the appeal is in fact 'frivolous.'" *Id.* at 882 n.7 (citation omitted).

Instantly, Counsel's petition avers she undertook "a conscientious examination of the record" and concludes the appeal is "wholly frivolous." Pet. to Withdraw as Counsel, 2/24/16, at 1 (unnumbered). Counsel informed Appellant of her conclusion by letter dated February 18, 2016, which she has attached to her petition to withdraw. The letter informed Appellant of his right to retain new counsel or to proceed *pro se* and raise any additional arguments for this Court's consideration. *Id.* at Ex. 1.

Counsel provided Appellant with a copy of the **Anders** brief, which includes a summary of the proceedings and facts of the case, pertinent law, and a discussion on why Appellant's issues are wholly without merit. **See Anders** Brief at 1-5. Counsel included her conclusion that "[t]his case provides no non-frivolous issues for review." **Id.** at 6. Therefore, we conclude Counsel has complied with the mandates of **Santiago**, and we proceed to our independent analysis. **See Orellana**, 86 A.3d at 879-80.

Counsel identifies the following issue: "there was insufficient evidence for [the trial court] to find [Appellant] guilty beyond a reasonable doubt for the crime of Driving Under the Influence—General Impairment." **Anders** Brief at 4. Appellant has not raised any additional issues for our consideration.

The following standard of review guides our analysis of sufficiency claims:

> We must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt. Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail.
>
> The evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented. It is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder. The Commonwealth's burden may be met by wholly circumstantial evidence and any doubt about the

defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

*Mobley*, 14 A.3d at 889-90 (citation omitted).

The trial court found Appellant guilty of DUI—general impairment, which provides:

**§ 3802.  Driving under the influence of alcohol or controlled substance**

**(a) General impairment.—**

(1) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

The Commonwealth need not demonstrate Appellant was driving erratically in order to prove guilt under Section 3802(a).  *Mobley*, 14 A.3d at 890.  Rather, "[t]he Commonwealth may prove that a person is incapable of safe driving through the failure of a field sobriety test."  *Id.*  (citation omitted).

Instantly, Officer Reaghard testified he observed Appellant speeding, Appellant admitted to consuming alcohol that day, and Appellant showed signs of impairment on each field sobriety test he was asked to perform. N.T. at 5-7, 9-13.  In Appellant's own testimony, he conceded he consumed alcohol on the day in question and that he was operating his vehicle in

excess of the speed limit. *Id.* at 25-26. Viewing the evidence presented in the light most favorable to the Commonwealth, we conclude there was sufficient evidence adduced for the trial court to find Appellant guilty of DUI-general impairment beyond a reasonable doubt. *See Mobley*, 14 A.3d at 889-90. Accordingly, we agree with Counsel's assessment, and we affirm Appellant's judgment of sentence.

Petition to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/20/2016